**COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983** FILED

Name _Paredes_          _Carlos_          _Alberto_
    (Last)           (First)          (Initial)

Prisoner Number _166123_

Institutional Address _Marin County Jail, 13 Peter Behr DR. San Rafael, CA 94903_

AUG 2 8 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

_Carlos Alberto Paredes_
(Enter the full name of plaintiff in this action.)

        vs.

_City of Novato Police Department; Officer_
_Taira DeBernardi; Badge #281_

(Enter the full name of the defendant(s) in this action)

SBA

C 07 4452

Case No. _____
(To be provided by the Clerk of Court)

**COMPLAINT UNDER THE CIVIL RIGHTS ACT,**
Title 42 U.S.C § 1983

(PR)

E-filing

*[All questions on this complaint form must be answered in order for your action to proceed..]*

I.    Exhaustion of Administrative Remedies.

    [**Note:** You must exhaust your administrative remedies before your claim can go

    forward. The court will dismiss any unexhausted claims.]

    A.    Place of present confinement _Marin County Jail_

    B.    Is there a grievance procedure in this institution?

            YES (✓)    NO ( )

    C.    Did you present the facts in your complaint for review through the grievance

        procedure?

            YES (✓)    NO ( )

    D.    If your answer is YES, list the appeal number and the date and result of the

        appeal at each level of review. If you did not pursue a certain level of appeal,

        explain why.

COMPLAINT            - 1 -

1. Informal appeal _____

_____

_____

2. First formal level Novato, Citizen Complaint (Penal Code §148.6 (A)(2),1832.5) Case number # 06-08. (See Exhibit-A, attached hereto for additional information.)

3. Second formal level City of Novato Police Advisory Review Board (See Exhibit-B, and C, attached hereto for additional information.)

4. Third formal level Novato City Manager, Daniel E. Keen

_____

_____

    E.    Is the last level to which you appealed the highest level of appeal available to you?

        YES (✓)    NO ( )

    F.    If you did not present your claim for review through the grievance procedure, explain why._____

_____

_____

II.    Parties.

    A.    Write your name and your present address. Do the same for additional plaintiffs, if any.

Carlos Paredes, Marin County Jail, 13 Peter Behr DR San Rafael CA 94903

_____

_____

    B.    Write the full name of each defendant, his or her official position, and his or her place of employment.

_____

COMPLAINT            - 2 -

1   Taira DeBernardi; City of Novato Police officer Badg Number N.P. 281

2

3

4

5   III.    Statement of Claim.

6           State here as briefly as possible the facts of your case.  Be sure to describe how each

7   defendant is involved and to include dates, when possible.  Do not give any legal arguments or

8   cite any cases or statutes.  If you have more than one claim, each claim should be set forth in a

9   separate numbered paragraph.

10  Officer Taira DeBernardi was deliberately Concealing exculpatory evidence (Debernard's

11  Police Report Supplemental No.# Original, Reported date: 2/18/06) from the Plaintiff in order

12  to Manufacter false material evidence (DeBernard's Police Report Supplemental No. 0005, Repor-

13  -ted date: 2/24/06).

14  On 2/23/06, Novato P.D. arrested the Plaintiff and falsely Charged him for a Crime. On 2/24/06,

15  Officer Debernardi wrote a false police report (See Exhibit-E, attached hereto) and stated that, "at his

16  time of Contact with the Suspect, he reported the Suspect ethnic being Hispanic Male."

17  On 3/17/06, the Plaintiff attorney made a discovery request for Police dispatch tapes. The dispatch tapes

18  reveald that officer Debernardi broadcast over the radio that the Suspect he was lookin for was a

19  "Black Male." (Afro-American). On the day of the Preliminary Hearing, Officer Debernardi Committed Perjury and

20  Obstructed Justice while under Oath (See Exhibit A and D; attached hereto). On 3/17/06, officer Debernardi's

21  Original Police report (See Exhibit-F, attached hereto) was accidentally disclosed throughout the Police Internal Affairs investigation.

22  According to exhibit F officer Debernardi wrote that the Suspect he was looking for was, "Not of Hispanic origin". Note: The
        Plaintiff is Mexican. In other words, he is Hispanic ethnic.

23  IV.     Relief.

24          Your complaint cannot go forward unless you request specific relief.  State briefly exactly

25  what you want the court to do for you.  Make no legal arguments; cite no cases or statutes.

26  The Plaintiff is (Carlos Paredes) is requesting from the Court to authorize "him" $ 20,000,000.⁰⁰

27  (twenty (20 million dollers) law Suit agents the City of Novato Police Department. In addition am requesting

28  from the Court to file Criminal Charges agents officer Taira Debernardi for Comitting Perjury and Obstruction of Justice.

COMPLAINT                          - 3 -

1   Officer Taina DeBernardi needs to be prosecuted for Manufactering false police

2   reports, and planting false evidence, Committing Perjury in a California Court room while under oath,

3   and Obstruction of Justice, Concealing material exculpatory evidence.

4

5        I declare under penalty of perjury that the foregoing is true and correct.

6

7        Signed this _Carlos Paredes_ day of _August 9,_____, 20_07_

8

9                _Carlos Paredes_

10                  (Plaintiff's signature)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT              - 4 -



THE CITY OF
# NOVATO
CALIFORNIA

Police Department
909 Machin Avenue
Novato, CA 94945-3242
415/897-4361
FAX 415/898-5344
www.ci.novato.ca.us

Mayor
   Carole Dillon-Knutson
Mayor Pro Tem
   Jeanne MacLeamy
Councilmembers
   Judy Arnold
   Pat Eklund
   Jim Leland

City Manager
   Daniel E. Keen

Police Chief
   Joseph M. Kreins

November 29, 2006


Mr. Carlos Paredes
Marin County Jail
13 Peter Behr Drive
San Rafael, CA 94903-5216


Dear Mr. Paredes:

Your Citizens Complaint which was numbered, 06-08 has been investigated. At the conclusion of any investigation, there are four possible outcomes. Those outcomes are: 1) **Unfounded**: Where the investigation conclusively proves that the act or acts alleged did not occur. 2) **Exonerated**: Where the investigation conclusively proves that the act or acts alleged did in fact occur but they were legal, just or proper. 3) **Sustained**: Where the investigation conclusively proves that the act or acts alleged did occur. 4) **Not Sustained:** Where the investigation is unable to conclusively prove, one way or the other, whether or not the act or acts alleged did in fact occur.

Your Citizens Complaint alleges that Officer DeBernardi deliberately attempted to provide false information to the Court while under oath. You alleged the following penal code violations:

PC 118 - Perjury Under Oath
PC118.1 - Filing a false police report
PC 118(a) - Perjury
PC 125 - Unqualified statements
PC 129 - False Return Under Oath "Perjury"
PC 134 - Preparing False Documents of Evidence
PC 141 - Tampering with Evidence
PC 182 - Conspiracy
PC 135 - Destroying Evidence

After review of your complaint and the investigation conducted by Sgt. Rich Hill, I have made a finding of **Unfounded** on all the alleged complaints. The investigation conclusively proved that the acts complained of did not occur.

If you are not satisfied with the outcome of the investigation you have the opportunity to appeal the investigation to the Police Advisory and Review Board via the office of the City Manager within 30 days of receipt of this document. The required form is attached to this letter.

If you have a question concerning the actual investigation process you can contact my office.

Sincerely,

JOSEPH M. KREINS
CHIEF OF POLICE

JMK:vt



March 14, 2007

**THE CITY OF**
**N O V A T O**
**CALIFORNIA**

75 Rowland Way #200
Novato, CA 94945-5054
415/899-8900
FAX 415/899-8213
*www.ci.novato.ca.us*

Mayor
  Jeanne MacLeamy
Mayor Pro Tem
  Pat Eklund
Councilmembers
  Carole Dillon-Knutson
  Ernie Gray
  Jim Leland

City Manager
  Daniel E. Keen

Carlos Paredes
13 Peter Behr Dr.
San Rafael, CA 94903

Dear Mr. Paredes:

The Novato Police Advisory Review Board (PARB) met on March 1 and discussed your appeal and how best to proceed. They have decided to consider your appeal at their next regular meeting, but would like to give you the opportunity to submit a statement for their consideration, in the event you are unable to attend the hearing.

You may submit a statement either orally (tape recorded) or in writing. In order to maintain the confidentiality of the proceeding, the statement must be transmitted to the PARB through your attorney, not through the U.S. Postal Service. If you wish to tape record a statement, your attorney should let the Sheriff Service Assistant know that Capt. Dennis McQueeny has approved the request. If there are any problems, your attorney should contact the Housing Sergeant on duty.

Please let me know by April 30 if you wish to proceed in this manner. The PARB's next regular meeting is tentatively scheduled for June 7, 2007 at which time they will consider your appeal.

Sincerely,

Mary Neilan
Assistant City Manager

c:    PARB members

EXHIBIT

May 17, 2007



**THE CITY OF**
**N O V A T O**
**C A L I F O R N I A**

75 Rowland Way #200
Novato, CA 94945-5054
415/899-8900
FAX 415/899-8213
*www.ci.novato.ca.us*

**Mayor**
  Jeanne MacLeamy
**Mayor Pro Tem**
  Pat Eklund
**Councilmembers**
  Carole Dillon-Knutson
  Ernie Gray
  Jim Leland

**City Manager**
  Daniel E. Keen

Carlos Paredes
13 Peter Behr Dr.
San Rafael, CA 94903

Dear Mr. Paredes:

I have received your letters and will forward them to the PARB for their review prior to the hearing on May 31.

It is possible for a family member to appear on your behalf at the hearing.

After the hearing, the Board will make a report to the City Manager as to their investigation and recommendation, if any. The City Manager will subsequently inform you as to the disposition of the appeal. This should happen within two weeks after the hearing.

Please feel free to contact me if you have other questions about the appeal process.

Sincerely,

Mary Neilan
Assistant City Manager

Note: Exhibit-D; was a report
which was Submitted to the City of
Novato Police Advisory Review Board.
Exhibit-D will explain the facts
and disclose the Conspiracy Coverup.

EXHIBit-F, was
deliberately Conceald for
up to Seven months.

Page 1 of 13

Line

1. Novato Police Advisory Review Board Citizen Complaint appeal Case No. # 06-08

2. Subject to Complaint, Taira DeBernardi N.P. # 281, 1319

3.

4. Opening Statement ⑤

5.

6. This report/Statements/Appeal is transmitted to the City of Novato P.A.R.B. This report

7. will be made on the ground that the actions of the Novato Police agents (Officer DeBernardi

8. and Sgt. J. Deadman N.P. # 227) were so outrageous Bias, prejudicial and Corruption

9. as to violate the fundamental fairness required by the due process Clause of the

10. "Fifth" and "Fourteeth" Amendment to the United States Constitution and Article I,

11. Section 15 of the California Constitution. In addition the (Peace officer)"Law Enforce-

12. ment Code of ETHICS."

13. This motion will be based on this notice of motion, on the attached exhibits,

14. declaration and memorandum of points and authorites (Case Law) served and

15. filed herewith, on Such Supplemental declarations and memoranda of point

16. and authorites as may hereafter be filed with the Novato Police Advisory Review

17. Board, on all the papers and records on file in this action, and documentary

18. evidence as may be presented at the hearing.

19. The following evidence, (exhibits) facts, and points and authorite will prove

20. beyond a Reasonable dout that officer Taira DeBernardi is a lying, Perjuring,

21. Corrupt genocidal RACIST, that has been manipulateing the Power of his

22. Police Badge and our Judicial System. Throughout the Novato P.D. investigation

23. (the February 18, 2006 offense) DeBernardi has been deliberately Concealing

24. "Exculpatory" material evidence (DeBernardi's Original report, Police Report Supplemental No.#

25. # Original, page 3 of 3, Reported Date 2/18/06) which was favorable to the accused, the

26. defendant (Carlos Paredes). DeBernard was Concealing his original report, in order

27. to intentionally modify, manufacture a false police Report (Violation of Penal Code Section

28. # 118; 1121; 134; 135; and 141(b)) to produce Stronger and more Satisfactory evidence

29. (DeBernardi's Police Report Supplemental No.# 0005, page 2 of 3, Reported Date 2/24/06).

30. DeBernardi represents the very worst elemints of the Novato Police Department

31. and Society! Since DeBernardi was both Victim and Law enforcement profession

32. he was willing to Commit Perjury, Obstruct Justice and So Corruptly motivated

33. to apprehend a Suspect and Solvein this Case only because it was an

1  attack on himself and other fellow officers from his Police Department.

2      The Evidence: Novato Police Dispatch tapes, DeBernardi's Original Police Report,

3  The false Manufacture Police Report, and Debernardi's testimony from the "Reporter's -

4  Transcript of Preliminary Hearing," all those items unfold a Criminal misconduct Coverup!!

5      On the night of the offense 2/18/06, Debernardi and Three other Law enforcement

6  officers Stated over the Police radio, that the perpetrator ethnic was "African American Male".

7  After the Search for the perpetrator, Debernardi wrote a Original report and wrote that

8  Suspect was, quote; "Not of Hispanic origin." However on the day of the Preliminary Hearing

9  examination (6/9/06), while Debernardi was being Cross-examined under Oath, he Committed

10 Perjury and Stated that on the night of the offense while he Searched for the Suspect

11 at the "Scene of the Crime" he told other officers "around him" that he described

12 the Suspect being a "Hispanic Male." (See Exhibit F, for more information on this Subject.)

13     The only reason Debernardi went a Step further to Conceal evidence, and

14 produce false police report and Obstruct Justice is because he under estimated

15 the Defendants ability to discover the recordings of Novato Police Dispatch tapes

16 and Secret Original Police report. Those two key items and ~~testimony~~ Debernardi's

17 testimony from the preliminary hearing is what supports Debernardi's Corrupt Criminal

18 misconduct. If it wasn't for the police dispatch tapes Debernardi would have

19 gotten away with Perjury and Obstruction of Justice. "You Cant unring

20 a Bell, once the Bell has rung"

21

22 A Criminal defendant has an ~~un~~ conditional right to represent himself or herself without

23 Counsel (Foretta vs California (1975) 422 U.S. 806, 833-835, 95 S.Ct. 2525, 45 L.Ed.2d 562),

24 With regards to Maintain Confidentiality of the "PARB" proceeding......

25

26 Thank you PARB for your time and Consideration into this matter.

27

28 I Carlos Paredes declare under penalty of Perjury that the foregoing is

29 true and Correct to the Best of my knowledge and belief.

                 Respectfully Submitted,

                 x _Carlos Paredes_  Dated: 5-13-7

                 Carlos Paredes

| | |
|---|---|
| 1 | Statements of Facts |
| 2 | |
| 3 | According to Police Reports, at 10 pm on February 18, 2006, (2/18/06) Novato Police |
| 4 | officer (Taira DeBernardi NPD# 281, 1369) responded to a fight involving "Ten Black Males," |
| 5 | not involving the defendant. While in the parking lot a Suspect driving a 2003, BMW |
| 6 | vehicle backed up into officer DeBernardi patrol car, Debernardi tapped on the window |
| 7 | and the driver refused to roll down the window. After attempts to get the driver |
| 8 | to exit his vehicle, the driver accelerated forward, in an attempt to flee. officer |
| 9 | (Stuart Baker) was standing within 20 feet from the front of the vehicle and had |
| 10 | his handgun drawn. The vehicle accelerated towards officer Baker and away from |
| 11 | DeBernardi. Officer Baker moved out the way of the vehicle which was accelerated |
| 12 | towards him. As the vehicle was exiting the parking lot, it Collided head on |
| 13 | into (Sergent J. Deadman NPD# 227) S.U.V. patrol vehicle. The vehicle sid slid |
| 14 | off the front of Sergent Deadman patrol vehicle and Continued out of |
| 15 | the parking lot. |
| 16 | The Novato police Department did not know the identity of the perpetrator but |
| 17 | according to (Novato P.D. dispatch tapes, that were given to the defendent's Attorney by the |
| 18 | Prosecutor upon request on March 16, 2006) Three diffrent "Law enforcement officer's |
| 19 | including (The "Prosecuting only reliable 'Key witness' officer DeBernardi") he also put |
| 20 | out a broadcast over the police dispatch radio a discription of a "Black Male- |
| 21 | Suspect" (Affrican American). In addition to that broadcast, the Suspect was report |
| 22 | wearing a "Baseball Hat." |
| 23 | According to the (Novato CAD dispatch transcript) the Search for the Suspect |
| 24 | started at 22:07hrs – 23:59hrs. Throughout the Search hole Search for the |
| 25 | Suspect, Novato Police officers were looking for a "Black Male." |
| 26 | After the Search for the Suspect, Officer Debernardi wrote a report (Police Report- |
| 27 | Supplemental No# Original, page 3 of 3, Reported Date: 2-18-06). In DeBernardi's report |
| 28 | page 2 of 3, under "Suspect Ethnicity;" DeBernardi: wrote, "quote; "Not of Hispenic |
| 29 | Origin;" unquote. (Refer to DeBernardi's "Police Report Supplemental No# original," for |
| 30 | additinal information) (See Exhibite A, B and B) |

1   On February 21, 2006, (according to Police reports) Detective Micheal Augusts
2   of the Marin County Auto Theft Task Force informed Novato Police Detective Oliver
3   Collins, that the ~~defendant (Carlos Paredes)~~ driver of the 2/18/06, incident might have
4   been the defendent (Carlos Paredes). Until Detective Augusts told Novato Detective
5   Collins that the defendent might have been the driver of the 2/18/06 Stolen
6   BMW, The defendent was never a suspect in the 2/18/06 alleged offense.
7   Based on that information the Novato Police Conducted a photographic Line-up
8   of Six Hispanic Men, in which (Carlos Paredes) was Magically identified as the
9   perpetrator of the February 18, 2006, offense. Officer DeBernardi pickd out a
10  "Hispanic" Suspect from the lineup.
11                          NOTE
12  Note: On February 18, 2006, Officer DeBernardi along with "Three" other Law
13  enforcement officers, ~~held~~ put out a broadcast over police Dispatch radio saying
14  ~~they said~~ that the Suspect was a "Black Male" (Affrican American). In
15  Officer DeBernardi's Original Police report (Supplemental No. Original, Reported Date-
16  2/18/06) he said that the Suspect of the 2/18/06 offense was, quote;
17  "NoT of Hispanic Origin", unquote.
18                          "FACTS"
19      On   February 22, 2006, A Hispanic Male Suspect (Carlos Paredes) is
20  arrested and charged with the 2/18/06 offense.
21
22  On February 23, 2006, The Novato Police Department Submitted five (5) Police
23  reports to the Marin County District Attorneys office to be used as evidence
24  agents the Defendant. The reports that were Submitted were: Officer Stuad Baker;
25  (2) Tom Mackenzie; (3) Alex Rivera, (4) Jennifer Welchy and (5) Oliver Collins.
26  ~~A the five police reports~~ According to all five reports, on the "First page" of each
27  report, under "Administrative Information", The evidence Show that each police
28  report was Successfully approved by "Approveing Officers" befor February 23, 2006
29  That is the reason why those police Reports were all Submitted to the District
30  Attorneys office. However, Officer DeBernardi's ~~orig~~ police Report Supplemental No. Origin
31  was never Submitted into evidence along with the other five police reports.
32  The evidence reflect that DeBernardi's Original report was Successfuly approved

1  by "approving officer N.P. # 133," Approval Date: 2/21/6. [ Question: If officer
2  Debemardi's Police Report Supplemental No. # Original was approved Prior to February 23
3  Why wasnt it Submitted and process with the other "Five" police reports
4  that were Submitted to the District Attorneys office ???!"
5
6  On February 24, 2006, two days after officer DeBemardi "knew" the suspect name,
7  Ethnicity and physical identity. DeBemardi wrote a police Report (Police Report Supplemental
8  -number 0005, Reported Date: 2/24/6 Reported time: 00:30 hrs) (see page 1 of 2 of the
9  report under "Administrative Information"). In Debemardi's report (Supplemental number #0005)
10 Second page, Second paragraph, Debemardi wrote the following Statement which was
11 100% Contradicting to his prior Original Report.
12        DeBemardi wrote: "At the time of my Contact with Paredes,
13                            I was unaware of his identity.
                             I described him as white or Hispanic Male."
14 After Debemardi wrote the false report (Supplemental-number 0005) it was Successfully
15 approved by Novato approving officer "Badge number N.P. 227" on 2/24/06 at
16 14:56 hrs. (See Debemardi's Police Report, page 1 of 2, for additional information).
17 (See Exhibit A, attached hereto, for the "UNMASKING" identity of "Who" Police
18 Badge number "Badge-number N.P. 227" realy is, and the unfold unfolding Conspiracy
19 Cover-up of the "two bins, Novato Police officers.")
20 (See Exhibit B-2, attached hereto, for additional information, on Debemardi Committing
21 Perjury while under Oath with regards to when he first wrote Supplemental No 0005 police report).
22
23 On February 27, 2006, Officer Debemardi's report "Police Report Supplemental No. # 0005" was process
24 as wrongfully produce as genuine upon proceeding and used as false evidence agents
25 the defendant. Magically DeBemardi's prior report, "Police Report Supplemental No. Original"
26 was never Submitted as evidence because it had was helpful to the accused (Carlos Paredes)
27 with exculpatory Statements which would have led to dismissal of the Criminal
28 Charges agents the accused (Refer to Exhibit B2, for additional information).
29
30 On March 16, 2006, The Defendants Attorney made a "discovery Request" under California
31 Penal Code Section 1054.1 to have access to "Novato Police Department Dispatch traffic
32 tapes; And CAD Log Printed. Upon our request, the those items were given to us.
33 "From that day forward, after hearing the Dispatch tapes, officer Debemardi's Criminal
34 misconduct Stated to fan unfold."

Page 6 of 13

Line

1. On June 7, 2006, the day of the Preliminary Hearing examination, Officer DeBernardi Contradicted
2. all his testimony while under Cross-examination. He deliberately Committed Perjury
3. while under Oath in a California Courtroom (See attached Exhibit's for more
4. additional information on how DeBernardi Obstructed Justice, while under Oath). On the
5. day of the Preliminary Hearing DeBernardi did not bring nor Submit his Original report
6. to the District Attorneys or prosecutor. In fact Officer DeBernardi only brought his
7. fabricated report (False-Police Report Supplemental No. 0005) to Support his false testimony while
8. under Oath (Refer to "Preliminary Hearing Transcript Report" page 35,36,37,38 for additional information)
9.
10.    On July 13, 2006, after analyzing Officer DeBernardi's testimony from the
11. "Preliminary Hearing Transcript Report" and Comparing it to other reliable documents. A
12. discrepency was noted. Based on DeBernardi's false statements/testimony while under
13. Oath and Other Seriously "California Penal Codes violations," and more reasons "I felt it
14. was my right to file a Complaint with the Novato P.D." (Penal Code 148.6(2)(A))
15.
16.    On July 30, 2006, A Citizen Complaint was Submitted to the Novato Police Department
17. along with, "two attached exhibit's A and B" in order to support allegations of,
18. Criminal misconduct, Perjury, Obstructing Justice and  Cal. Penal Code violations, Sections
19. -118; 118.1; 118A; 125; 129; 134; 135; 141.1(b) and 182;(A)(2)(3).
20.
21. On August 17, 2006, Novato Police Department "Internal Affair's Investigator"
22. (Sergeant Richard Hill, N.P.#133) Came to the Marin County Jail to "tape record" a
23. Statement from the defendant (Carlos Paredes) regarding the Citizen Complaint filed on
24. Officer Taira DeBernardi. While being interviewd by Sergeant Hill, a documented report,
25. "writing by Officer DeBernardi," was accidentally Shown to the defendant. The report
26. that was accidentally disclose was (DeBernardi's Police Report Supplemental No. Original-
27. -Reported Date: 2/18/06). According to the report, DeBernardi wrote that the Suspect
28. of the 2/18/6 offense was "Ethnicity" was; quote; "Not of Hispanic origin."
29.    After the interview with Sergeant Hill, the Defendant (Carlos Paredes) informed
30. Attorney Coffino, that there was a Confea Conceald police Report (Debernardi's -
31. -Supplemental No. Original) which had Exculpatory Statements. In addition DeBernardi's
32. Conceald report, was very Contradicting and damaging and to his Credibility
33. when Comparing both of his ver police Reports, Supplemental No. Original and
34. Supplemental No.#0005. Based on Sergeant Hill's, negligence, is what led

1  to the disclosure of officers Debernardi's Original Police Report.

2  Again "The Only reason the Original report was ever discoverd was because

3  the defendant accidentally Saw it on 8/17/06, while being investigated by

4  Novato Police Department Internal Affairs, investigator Sgt. Richard Hill, Badge number N.P.133."

5  The only reason the Novato PD. turnt over DeBernardi's Original Police report was

6  because We fucked discoverd it and because under Cal Penal Code section 1054(E)

7  "It's mandated by the Constitution of the United States."

8

9  California Penal Code section 135 "Destroying or Concealing documentary evidence."

10  Destroying Evidence. Every person who, knowing that any books, papers, record, instrument in

11  writing, or other matter or thing, is about to be produced in evidence upon any trail,

12  inquiry, or investigation whatever, authorized by law, willfully destroys or Conceals the

13  same, with intent thereby to prevent it from being produced is guilty of a misdemeanor.

14

15  On August 25, 2006, According to an artical in the "Marin County Independent

16  Journal" news paper. A 35 year old Black woman "Donna Hammilton" was physically

17  Assaulted and calld Racial names by Three Novato Police officers. Officer Debernardi was

18  one of the officers that was involed in the beating, that Soo injurd the

19  Black woman that said. According to the artical Donna Hammilton filed a Citizen

20  Complaint on Office Debernardi. (Refer to Marin County I.J. news paper artical for more information)

21

22  Note: And just a final note, the dispatch tapes and CAD Log transcript reflect that the

23  Suspect of the 2/18/6 offense was repeated wearing a "Baseball Hat", And yet officer

24  DeBernardi had no hesitation describing the lenght of the person's hair in his

25  false report (Supplemental No. 0005) And magically, it happens to fit the same

26  hair in lenght of the Defendants (Carlos Pareedo) Mugshot picture. Which by the

27  way, Debernardi provided that hair lenght (1/2 inch to 1 inch Long) description

28  in the fabricated police report, only after already knowing what the defendent

29  lookt like. In addition Debernardi dosn't write anything about a Bale Ball Hat

30  in his false report. It is, part of Debernardi's personal training as a Law

31  enforcement professional, to record in the police Report the important Critical

32  details of an investigation! (Commission on Peace Officers Standards Training).

33  I hope it's clear to the P.A.R.B. that officer Debernardi had a

1  unique and personal bias motive to obstruct Justice and bring Justice upon
2  himself, regardless of the Defendents due process rights under the Sat state
3  and federal Constitutions. Sence Debernardi was both Victim, witness and
4  Law enforcement Professional, he was manipulateby both Criminal Judicial
5  System, and the Power of his Police authoritie in order to Conceal
6  his prior police report. Sence Officer DeBernardi's Original police report was
7  very helpful to the accused (Carlos Paredes) it had exculpatory statements which
8  would have led to dissmissal of Criminal charges. therefore Officer Debernardi
9  went a step further by in prepairing a false evidence (Police Report). In
10  his false report (Police Report Supplemental No. 0005, Reported Date: 2/24/6) he describes
11  the Suspect as being Hispanic or white, only after already knowing the
12  Suspects physical identity. Sence the Discovery of the prior police report,
13  Debernardi is Subject to Corruption and undermines the hole police Depardent
14  investigation regarding this "Case." Debernardi's Credibility is worth
15  Noting! But what is alot more reliable is what Debernardi said
16  over the radio repeatly along with other Police officers that it was a
17  "Black Male" Suspect. And how Debernardi could describe the hair
18  langht when you've got a guy wearing a base ball Hat is
19  a big mystery to me!??/
20
21  ## MEMORANDUM OF POINTS AND AUTHORITIES
22
23  The working men and women in California law enforcement risk their lives every day. The people
24  of California greatly appreciate the hard work and dedication of law enforcement officers in
25  protecting public safety. The good name of those officers should not be tarnished by the
26  actions of those few who Commit discriminatory practices. ~~Badless~~
27
28  Penal Code Section 13519.4. Racial and Cultural diversity training.
29  d) "Racial profiling," for purposes of this Section, is the practice of detaining a Suspect
30  based on a broad set of criteria which casts suspicion on an entire Class of
31  without any individualized suspicion of the particular person being stopped.
32  (e) A law enforcement officer shall not engage in racial profiling.

| | |
|---|---|
| 1 | "Scope and Weight of Evidence" |
| 2 | Evidence is broadly defined to include testimony, writing, material objects, or other things |
| 3 | presented to the Sense that are offered to prove the existence or nonexistence of a |
| 4 | fact. (Evidence Code Section 140). |
| 5 | "Party having power to produce better Evidence" |
| 6 | If weaker and less Satisfactory evidence is offered when it was within |
| 7 | the power of the party to produce stronger and more Satisfactory evidence, the |
| 8 | evidence offered should be viewed with distrust (Evidence Code Section 412). |
| 9 | "Destroying or Canceling Documentary Evidence" |
| 10 | Every person who, knowing that any book, paper, record, instrument in writing, or other |
| 11 | matter or thing, is about to be produced in evidence upon any trial, inquiry, or |
| 12 | investigation whatever, authorized by law, willfully destroys or conceals the same, with intent |
| 13 | thereby to prevent it from being produce is guilty of a misdemeanor (Penal Code Section 135). |
| 14 | "Preparing false documentary evidence" |
| 15 | Every person guilty of preparing any false or ante-dated book, paper, record, instrument |
| 16 | in writing, or other matter or thing, with intent to produce it, or allow it to be produce |
| 17 | for fraudulent or deceitful purpose, as genuine or true, upon any trial, proceeding, |
| 18 | or inquiry whatever, authorized by law is guilty of felony (Penal Code 134) |
| 19 | Peace officer; false report |
| 20 | Every peace officer who files any report with the agency which employs him or her regarding |
| 21 | the commission of any Crime or any investigation of any Crime, if he or she knowingly and |
| 22 | intentionally makes any statement regarding any material |
| 23 | matter in the report which the officer knows to be false, whether or not the statement |
| 24 | is Certified or otherwise expressly reported as true, is guilty of filing a false report |
| 25 | punishable by imprisonment. (Penal Code Section 118.1) |
| 26 | Peace Officer-Planting or Manufacturing Evidence |
| 27 | Every peace officer who knowingly, willfully, and intentionally alters, modifies, plants, places, |
| 28 | manufactures, Conceals, or moves any physical matter, with Specific intent that the action |
| 29 | will result in a person being charged with a crime or with the Specific |
| 30 | intent that the physical matter will be wrongfully produce as genuine or true, upon |
| 31 | any trial, proceeding, or inquiry whatever, is guilty of violation of (Penal Code Section 141, |
| 32 | Subdivision (b), a Crime) |

1    In order to prove this crime, each of the following elements must be proved:

2         1. A Peace officer knowingly, willfully, and intentionally [altered] [₂] [planted] [₃]

3    [placed] [₆] [manufactured] [₃] [concealed] [₄] [or] [moved] any physical matter; and

4         2. The peace officer did so [with the specific im intent that the physical matter

5    action would result in a person being charged with a crime] [or removed [with the

6    specific intent that the physical matter will be wrongfully produced as genuine

7    or true upon any [trial, proceeding, ect.] whatever]. (CALJIC No. 7.18)

8

9         Perjury defined; evidence necessary to Support Conviction.

10   Every person who, having taken an Oath to (testify, declare, etc) truly before any Competent

11   tribunal, officer, or person, in any of the cases in which the Oath may the by law

12   be administered, willfully and Contrary to the Oath, States as true any material

13   which he or she knows to be false, is guilty of the Crime of perjury in violation

14   of Penal Code Section 118.

15   CALJIC 7.20 Perjury Under "Oath"-Defined

16   A false statement is material if [it could probably influence the outcome of the

17   proceedings in which it is uttered. Whether it actually had that effect is irrelevant.]

18        In order to prove this crime, each of the following elements must be proved:

19   (1) A person knowingly took an Oath to (testify, declare, ect) truly before a Competent

20   (tribunal, ect) and willfully Stated as true, matter which was false;

21   (2) The (testimony, declaration, etc) was [given] [made] in circumstances in which an

22   Oath may by law be administered [;] [, and the deposition had been signed by the

23   defendant] [and was delivered to another person with the specific intent that

24   it be uttered or published as true;]

25   (3) The person knew the statement was false;

26   (4) The false statement was material; and

27   (5) The person had the specific intent to (testify, declare, etc) falsely under Oath.

28

29   Destruction of Evidence [DeBernardi's Original Police Report, Dated 2-18-0].

30        The United States Supreme Court again addressed the issue in (Arizona vs Young-

31   -blood (1988) 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281) holding that unless a Criminal

32   defendant Can [Show] [bad] faith by the [Police], failure to preserve useful evidence

33   does not Constitute a denial of due process of law. The presence or absence

1 | of bad faith by the police necessarily turns on the police's knowledge of the
2 | EXCULPATORY VALUE OF THE EVIDENCE at the time it is lost, destroyed,
3 | or Conceald.
4 | On February 18, 2006, after the Search for the Suspect of the 2/12/6 offense, Officer
5 | Debernardi wrote an "Original" Police Report describein the Suspect ethnicity as, quote;
6 | "Not of Hispanic Origin", unquote. "DeBernardi's Original police report was produce before and
7 | befor the arrest of a Suspect."
8 | On February 24, 2006, two days after the arrest of a Suspect, Debernardi realized that his
9 | Original police Report was helpful material evidence on behalf of the accused because it
10 | had exist exculparty value, which would have Supported the accused innocences.
11 | Officer DeBernardi then Conceals his Original police Report in order to produce a
12 | false police Report as genuine. The original police report was never Submited into
13 | evidence nor was it ever disclose throughout Cout proceeding. Infact the original report
14 | was Conceald for Seven months and Kept secret. On August 17, 2006, the report was
15 | only discoverd because it was evidently accidentally Shown to the defendant regarding a
16 | Citizen Complaint investigation. Base on that information is what led to the discovery of
17 | the Conspiracy Cover-up. DeBernardi's Conceald police Report was the missing element
18 | and puzzle piece to prove Obstraction of Justice and Corruption.
19 | Police Reports
20 | Due process requires disclosure of any reports Containing evidence that undermines the
21 | Credibility or probative value of prosecution evidence [Prosecution Evidence: DeBernardi's
22 | false police Report Supplemental-number 0005, Reported Date: 2/24/6] (United State Vs-
23 | -Strifler, 851 F. 2d 1197 (9th Cir. 1988); Davis vs Alaska, 415 U.S. 308, 94 S. Ct 1105,
24 | 39 L. Ed. 2d 347 (1974)).
25 | Statements of Testifying Witnesses
26 | Statements: The California Supreme Cout has found that "[a]ll notes or memoranda,
27 | handwritten or type," by law enforcement "With any witness which is relevant to
28 | said witness' Credibility or upon the issues of defendents' guilt or innocence"
29 | must be disclosed. (People vs Ayala, 23 Cal. 4th 225, 279, 96 Cal. Rptr. 2d 682, 1 P. 3d
30 | 3 (2000).
31 | Oral statements: The Supreme Cout, has noted that oral "reports of statements"
32 | of witnesses, as well as written and recorded reports of Statements are
33 | discoverable. (People vs Hardy, 2 Cal. 4th 86, 179, 5 Cal. Rptr. 2d 796, 825 P.
34 | 2d 781 (1992)).

| | |
|---|---|
| 1 | Inconsistent Statements. |
| 2 | Statements made by a prosecution witness that are inconsistent or that conflict with |
| 3 | other statements made by the witness undermine the witness' credibility, and are |
| 4 | favorable to the accused. |
| 5 | Original Notes of Police. |
| 6 | The original written notes of the interview of a witness constitute a written |
| 7 | "Statement" under the discovery Statutes. The raw written notes of interviews by |
| 8 | investigators (Police investigators) or prosecuting attorneys with witnesses, that reflect |
| 9 | the witness's Statement, but not the interviewer's impression or opinion, are |
| 10 | "Statements" and must be disclosed, whether or not the notes are used to |
| 11 | produce a formal written statement report (Thompson Vs Superior Court, 53 |
| 12 | Cal. App. 4th 480, 484-488, 61 Cal. Rptr. 2d 785 (2d Dist. 1997)). |
| 13 | In reaching this conclusion the Court of Appeals held that "the witness' |
| 14 | words, whether recorded electronically or by Someone writing them down, are |
| 15 | the Statements. Whether left in that form, or rearranged, restated, or edited by |
| 16 | Someone els, the witness' words in the raw written notes or unedited |
| 17 | tape remain a Statement." (Thompson Vs Superior Court (1997) 55 Cal. App. 4th |
| 18 | 480, 486, 61 Cal. Rptr. 2d 785). |
| 19 | Federal Courts also Consider the notes that record the oral statements |
| 20 | of a witness as a "Statement" of that witness which may be used as a |
| 21 | prior inconsistent Statement to impeach the witness. (Paradis Vs Arave (9th |
| 22 | Cir. 2000) 240 F.3d 1169, 1179). |
| 23 | Nevertheless officer DeBernardi is in violation of the |
| 24 | Defendants due process rights under the State and Federal Constitutions, for |
| 25 | Concealing in bad faith the Original Police Report. In addition DeBernardi is |
| 26 | also in violation of California Penal Code Sections for Submitting false documentary |
| 27 | evidence, false Statements under Oath, Committing Perjury, and Obstructing Justice. |
| 28 | |
| 29 | CALJIC 2.92 Factors to Consider in proving Identity by Eyewitness Testimony. |
| 30 | Eyewitness testimony has been received in this trail for the purpose of |
| 31 | identifying the defendant as the perpetrator of the Crime Charged. In determing the |
| 32 | [weight] to be given eyewitness identification testimony, you should Consider the |
| 33 | believability of the eyewitness as well as other factors which bear upon the |
| 34 | accuracy of the witness' identification of the defendant, including, but |

1  not limited to, any of the following:

2  [The witness's ability, following the observation, to provide a description of the perpetrator of

3  the act;]          [The extent to which the defendant either fits or does not

4  fit the description of the perpetrator previously given by the witness;]

5  [The Cross-racial [or ethnic] nature of the identification;]

6  [Whether the witness was a trained Observer;]

7  [whether Criminal was masked or disguised;]

8  [whether witness made any notes of the incident;] and

9  [Any other evidence relating to the witness' ability to make an identification]

10

11  The evidence: Novato Police Dispatch tapes, Debernardi's Original Police Report, The false

12  Police report, and Debernardi's testimony from the Preliminary Hearing Transcript Report, all

13  unfold a Criminal misconduct Coverup.!!!!!!!!!

14  On the night of the incident 2/18/06, Debernardi and two other Law enforcement officers

15  Stated over the Police radio that the perpetrator ethnic was "African American."

16  After the Search for the perpetrator, Debernardi wrote a Original report and wrote that Suspect

17  was "Not of Hispanic Origin." However on the day of the Preliminary Hearing examination 6/9/06,

18  while under oath/Cross-examination Debernardi Commited Perjury and Stated that on

19  the night of the offense while Searching for the Suspect, at the Scene of the Crime,

20  he told other officers "around him" that the Suspect was "Hispanic." (See Exhibit-

21  -F for more information on this Subject).

22     The only reason reason Debernardi Obstructed Justice and Submitted false

23  evidence is because he underestimated the Defendants ability to discover the

24  Novato Police Department Dispatch tapes and the Original Police report. Those two "Key" items

25  is and testimony from the preliminary hearing, is what Supports Debernardi's Criminal misconduct.

26     Just because Officer is a Peace officer, does not Shield him from the United States

27  Judicial System nor does it give him power or the right to violate the

28  Constitutional Rights of Citizens of the Community.

29  I understand that am not a U.S citizen, but I still have Constitutional Right

30  rights regardless if am "Mexican".

31           Thank you PARB for your time and Consideration into this matter.

32  I Carlos Paredes declare under Penalty of Perjury that the foregoing is

33  true and Correct to the Best          Respectfully Submitted,

34  of my knowledge and belief.          x Carlos Paredes  Dated 5/13/7

                                         Carlos Paredes

[Page 1 of 4]

Line

1    Exhibit – B: "Perjury while under Oath"

2    Inconsistent and Contradicting Statements:

3.

4    Fact: On the night of the incident "February 18, 2006." Officer Debernardi wrote a

5    report (Police Report Supplemental No. Original, page 3of 3 Reported Date: 2/18/06) and

6    wrote that the Suspect Ethicity was, quote ; "Not of Hispanic Origin," unquote.

7

8    "However, DeBernardi's original Police Report was never Submitted or process to the

9    Marin County District Attorneys office to be used as evidence in the prosecution's

10   investigation. It wasn't even Submitted as evidence "Three Months after the incident"

11   on (06/09/06) the day of the Preliminary Hearing examination! In fact, Debernardi's

12   original Police report was Kept Secret and deliberately Conceald for up to

13   Seven months when it was accidentally disclose on August 17, 2006. (See Exhibit    –

14   for more additional information on this Subject matter)."

15

16   On February 24, 2006, two days after officer DeBernardi "Knew" the Suspect name,

17   Race, and physical identity, He wrote a report (Police Report Supplemental No. 0005, page 2of

18   2 Reported Date: 2/24/06). According to Debernardis report (Report Supplemental No. 0005)

19   he wrote a "Statement" which was false, Contradicting and very impeaching to

20   "his" Credibility with regards to his prior description of the Suspect he

21   made on the night of 2/18/06, on Both, "Police dispatch radio" Saying it was

22   a "Black Male" Suspect, and What discription he wrote on his original

23   report dated 2/18/06 (Supplemental No Original) quote; "Not of Hispanic Origin."

24      Magically in Debernardis report dated 2/24/6, (Supplemental No. 0005) he

25   wrote the following : "At the time of my Contact with Paredes, I was unaware

26   of his identity. I described him as a white or Hispanic Male," Debernardis

27   false police Report was Submitted to the District Attorneys office to be process

28   as evidence agents the defendant.

29      Debernardi's personal interest and desire to deliberately Conceal documented

30   evidence (Police Report Supplemental No. Original, Reported Date: 2/18/06) and to falsely

31   Produce Stronger and more Satisfactory ungenuine matiral evidence (Police Report

32   Supplemental No. 0005) were bias motives for the following reason's : (1) officer

33   Debernardi wrote in his original police report that the Suspect of the

Exhibit-B 2

1   2/18/6 offense was, quote; "Not of Hispanic origin." On 2/22/06, the suspect that
2   was being Charged for the 2/18/6 offense was Hispanic (defendent-Carlos Paredes).
3   DeBernardi knew that the original report and prior Statement was favorable
4   evidence to the accused (Carlos Paredes) because it had exculpatory statements,
5   "which if descoverd," could have led to the dismissal or acquittal of the
6   Criminal Charges against the accused. These Therefor the original report was
7   Concealed and never Submitted to into evidence.        (2) Both of the victims,
8   officer DeBernardi and "Srgt Deadman, Police Badge number 2UP 227" Conspired
9   to manipulate the power of the Police Badge and to Obstruct Justice (see -
10  -Exhibit A). Sence "they" both were Law enforcement professionals, witnesses
11  who were also Victim's, they had a very unique personal interest and motivation
12  to quickly find and arrest the perpetrator and Solving the crime regardless
13  if it was the allage perpetrator, or not, of the 2/18/6 offense. Sense the
14  attack was on Officer Baker, Deadmond and Debernardi, both of the victims
15  went a Step further in bringing Justice upon themselfs by Concealing evidence
16  Debernardis report (Supplemental No-Original) in order to po prepar and
17  produce a False police report (Debernardis Supplemental No. 0005, Reported Date: 2/24/6
18  When the false report was finishd, Srgt Deadman NP 227 (the victim) Conspired
19  to Comitting perjury and personally approved Debernardis false police
20  report. "Keep in mind, On the night of the incident Srgt Deadman knew that
21  the Suspect they wer were looking for, vo for two hours was a Black guy,
23  how, and why? because it was dispatch over the police radio" (Refer to Exhibit A,
24  ta attached hereto, for the unmasking and Conspiracy Cover-up, of the two
25  Corrupted, bias Novato Police officers). (3.) Sence Debernardis Original Statements
26  in his Original police report was very helpful to the accused, but yet
27  damageing to both Novato P.D. Investigations and Marin County prosecutor, Debernardi
28  Original report was Concealed for seven months! Sence Officer Debernardi wrote
29  and finished his Original Police Report befor the arrest of o the Suspect
30  (Carlos Paredes). A false manufacture police report (Supplemental No. 0005) was produce
31  on 2/24/06 at 00:30 hrs, with Stronger and Satisfactory missleding statemens
32  then the prior original police report. (4.) By unrevealing and disclos Concealing
33  the Original Police Report Debernardi was able to easy modife, plant,
34  manufacture and produce False evidence, "Police Report Supplemental No. 0005."

[Pag 3 of 4]

Exhibit - B2

| | |
|---|---|
| 1 | The motive of Suppressing the Original report was to produce stronger and |
| 2 | more satisfactory evidence. Since the false report (Supplemental No. 0005) was |
| 3 | then wrongfully produce as genuine upon proceeding, Debernard made it he's |
| 4 | Obligation to never let the Original Report be disclose because it was so |
| 5 | damageing to Debernardis Credibility. Even more so, it was realy |
| 6 | Contradicting and very bias-impeaching evidence which would have |
| 7 | Supported the true intentions of Debernardis Criminal behavior, in addintion |
| 8 | it would have validated the also supported the Criminal Elemints of |
| 9 | bias, Perjury, Corruption, falsification, Conspiracy and Obstruction of |
| 10 | Justice, with regords to Compareing both reports together (Supplemental No.#0005 |
| 11 | and report (Supplemental No.# Original). |
| 12 | Fact: Nevertheless, Officer Debernardi is in violation of California Penal Code |
| 13 | Section's deleted 118. "Perjury defined; evidence necessary to sppeil Conviction," |
| 14 | 118.1 "Peace officers; false report," 134 "Preparing false documentary evidence," |
| 15 | 135 "Destroying or Concealing documentary evidence," 141(b) "Peace officer Planting |
| 16 | or Manufacturing Evidence" and California Evidence Code Section 412 "Party having |
| 17 | power to produce better evidence". |
| 18 | Debernardi has also violated the "Law Enforcement Code of |
| 19 | Ethics," part of it states: "To Protect the Innocent Ageinst DECEPTON" - |
| 20 | "I will never Act Oficial Officiously Or Personal Feelings Prejudices, |
| 21 | Animosities or Fried Ships to Enful Influence my Decisions" - "Honest in |
| 22 | Thought and Deed in both my Personal and Official Life" - "To Respect |
| 23 | The Constitutional Right of All Men to Liberty Equality and |
| 24 | Justice". |
| 25 | Debernardi seems to think this "Code of Ethics" has no meaning or Value |
| 26 | to him! |
| 27 | (Preliminary Hearing Transcript Report |
| 28 | Testimony From Officer DeBernardi, Under Cross-examination) |
| 29 | (Preliminary Report page 35: Line 17-28) |
| 30 | Defense Attorney: [Q.] Do you have your police Report in front of you? |
| 31 | [A.] Yes, I do. (Police Report Supplemental No.0005, Reported Date: 2/24/6) |
| 32 | [Q] And it reflects that you wrote the report on February 24, is that right? |
| 33 | [A] May I check my report to verify that?   Attorney: Yes. |

Page 4 of 4                    Exhibit B2

Line

1. THE WITNESS DEBERNARDI : Yes, the report date shows February 24th, '06.

2. [Q.] And is that when you actually wrote the report?   [A] No, it's not.

3.

4.         California Penal Code Section 118.

5.         (Perjury defined; evidence necessary to Support Conviction)

6. Perjury under Oath. Every person who having taken an Oath to (testify, declare etc.) truly befor

7. any Competent tribunal, officer, or person, in any of the Cases in which the Oath may by

8. law be administered willfully and Contrary to the Oath, States as true any material

9. matter which he or she knows to be false; is guilty of the Crime of perjury in violation

10. of Penal Code Section 118.

11.

12. Preliminary Hearing Transcript Report, page 36: Line 1-28 (Officer Debernardi under...... Oath)

13. [Q.] Well, how do you know when you wrote the report?

14. [A] That date should be in the reported date box, top of the report, administrative

15. information, first line, fourth box.   [Q.] Right. And that says reported date 2/24/06, Right!

16. [A] Correct.   [Q.] So, thats when you wrote your report, Correct?

17. [A] No, it's not.   [Q.] Okay. Let me ask you again. When did you write your report?

18. [A] I wrote it the night of the incident. The incident occurred on 2/18. So,

19. possibly by the time I sat down in front the Computer and started writing, it was 2/18/6.

20.         Fact: Debernardi Committed perjury when he stated that the 2/24/6

21.         report was written the night of the incident. The evidence Speaks for it's self!

22.

23. [Q.] And you wrote your report befor the photo lineup?   [A] Yes, the report was

24. Started the evening of the incident.   [Q.] Okay. on page 2 of your report

25. you refer to the photo lineup, don't you?   [A.] Yes, I do.

26. (Page 37) [Q.] So, how Could you have written your report befor the photo lineup if you're

27. referring to the photo lineup in the report?   [A.] The report was not Submitted

28. until --- and I would to check the log for the exact date, but the report was

29. Submitted after the photographic lineup.

30.     Note: Debernardi According to testimony from Debernardi, he said under oath that the

31. 2/24/6 report (Police Report Supplemental number 0005) was written on the night of

32. the incident. Is 100% false and Contradicting. The evidence and Debernardi's

33. testimony speaks for its Self, regardless of what he Says! Nevertheless Debernardi

34. is also in violation of Penal Code 141(b) and 118.1 "Peace officer false Police Report.

[ Page 1 of ]

Exhibit A-1

| Line | |
|---|---|
| 1. | EXHIBIT-A: Unmaskin the Mysterious, Secret identity of |
| 2. | Novato Police Department Badge Number "NP 227" (Sergeant John David Deadmon, NP 227) |
| 3. | |
| 4. | Bias: Unfoldin Badge number "NP 227" Conspiracy Cover-up. |
| 5. | |
| 6. | FACT: Accordin to police reports, on the night of ~~February 18, 2006~~ "February 18, 2006" the Suspect |
| 7. | (Black Male) of the Stolen vehicle Crashd into Sergeant "Deadmon NP 227" S.U.V. patrol |
| 8. | vehicle. |
| 9. | The Suspect of the vehicle was discribed by officer "Taira DeBernardi" and other Law |
| 10. | enforcement officers as a "Black Male" (~~African American~~) over the police dispatch radio. |
| 11. | (Refer to Novato Dispatch traffic tapes) According to dispatch tapes, the "Black Male" discription was |
| 12. | broadcast over the air ~~6~~ Five ("5") times. Srgt Deadmon was also involved in the Search |
| 13. | for the Black Male Suspect. |
| 14. | After the search for the Suspect, Officer DeBernardi (~~The Prosecution key witness~~) wrote a police |
| 15. | report (Police Report Supplemental No.# Original, Reported Date 2/18/06). According to DeBernardi's original |
| 16. | report, he wrote that the Suspect or "Ethnicity" was, quote; "NOT OF Hispanic Origin." |
| 17. | the original report was approved on ~~2/18/06~~, Approvin officer Srgt Richard Hill, NP 133. |
| 18. | |
| 19. | On ~~February 21, 2006~~ a Hispanic Male Suspect is arrested and charged with the 2/18/06 incident. |
| 20. | |
| 21. | On ~~February 23, 2006~~, Novato Police Department Submitted "Five" (5) police Reports to the |
| 22. | District Attorneys office to be used as evidence agents the defendant. |
| 23. | However, Officer DeBernardis Original report (Police Report Supplemental No.# Original, Reported Date 2-18-06) |
| 24. | was never Submitted into evidence. In fact the Original report was deliberately Conceald |
| 25. | for up to "7" months up untill ~~August 17, 2006~~ the day the Original report was |
| 26. | accidentally disclose "for the first time ever" by Novato P.D. Internal Affairs investigator |
| 27. | Srgt Hill, who was investigating a Civil matter (Citizen Complaint No.# 06-08, Subject, DeBernardi |
| 28. | allegations of "Perjury while under Oath). |
| 29. | |
| 30. | MEMORANDUM OF POINTS AND AUTHORITIES |
| 31. | (Subject Officer DeBernardis Conceald Police Report Supplemental No.# Original.) |
| 32. | (1.) Under Penal Code Section 135, Destroying or Concealing documentary evidence. |
| 33. | Every person who knowing that any book, paper, record, instrument in writing, or other matter |
| 34. | or thing, is about to be produced in evidence upon trial, inquiry, or investigation |

Page 2 of 4
Line

1. whatever, authorized by law, willfully destroys or Conceals the same, with intent thereby
2. to prevent it from being produced, is guilty of a misdemeanor. (Pens Code, Section 135)
3.
4. <u>Statements of Testifying witness</u>
5. Statements of testifying witness, under California Penal Code, Section 1054.1(F) provides for
6. disclosure of "witness written or recorded Statements of witness or reports of the Statements
7. of witness whom the prosecutor intends to call at the trial."
8. Statements: The California Supreme Courts has found that "[A]ll notes or memoranda,
9. handwritten or typed" by Law enforcement "with any witness which is relevant
10. to said with witness' Credibility or upon the issues of defendants' guilt or
11. innocence" must be disclosed. (People v. Ayala, 23 Cal.4th 225, 279, 96 Cal. Rptr. 2d
12. 682, 1 P.3d 3 (2000).
13. <u>Police Reports</u>: is based both on the Statute and on due Process
14. Concerns. Penal Code § 1054.1(F) provides for disclosure of any reports Containing evidence
15. that undermines the Credibility or probative value of prosecution evidence.
16. (United States V. Shifler, 851 F.2d 1197 (9th Cir. 1988); Davis V. Alaska, 415 U.S. 308,
17. 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974)).
18. <u>Original Notes of Police</u>: The original written notes of the interview of a
19. witness Constitute a written "Statement" under the discovery Statutes. The raw
20. written notes of interviews by investigators (Police Departments) or prosecuting attorneys
21. with witnesses, that reflect the witness's Statements, but not the interviewer's
22. impressions or app opinions, are "Statements" and must be disclosed, whether or
23. not the notes are used to produce a formal written Statement report.
24. Thompson V. Superior Court, 53 Cal.App. 4th 480, 484-488, 61 Cal. Rptr. 2d 785-
25. (2d Dist. 1997).
26. In reaching this Conclusion the Court of Appeals held that "the witness' words
27. whether recorded electronically or by someone writing them down, are the Statements.
28. Whether left in that from, or rearranged, or edited by someone 'els, the witness'
29. words in the raw written notes or unedited tapes remain a Statement." (Thompson V.
30. Superior Court (1975) 55 Cal.App. 4th 480, 486, 61 Cal. Rptr. 2d 785.)
31. Federal Courts also Consider the notes that record the Oral statements of a
32. witness as a "Statement" of the witness which may be used as a prior inconsistent
33. to impeach the witness. (Randis s. V. Areve (9th Cir 2000) 240 F.3d 1169, 1179.)

Page 3 of 4

Line

1. According to the Marin County District Attorneys report filed on ~~February 23 2006~~,

2. Sergeant John Deadman was a Victim of a (245.C; Assault with deadly weapon

3. upon a Peace officer).

4.     On ~~February 22 2006~~, two days after already knowing the identity of the

5. Suspect (defendant Carlos Paredes) Officer DeBernardi fabricated false evidence, a "false"

6. police report (Police Report Supplemental No# 0005; Reported Date 2/24/06 at 00:30 hrs).

7.     Note: On the day of the Preliminary Hearing (6/09/06) while DeBernardi was under cross-

8. examination, he Committed Perjury while under Oath and said he wrote his police report

9. ~~Supplemental No. 0005~~ on the night of 2/18/06 and deliberately denying writing the

10. report on 2/24/06. However the evidence prove that ~~police report~~ in fact police report

11. Supplemental No 0005, was Started/written on 2/24/06. (See Exhibit   , for additional

12. information and disclosure of when of DeBernardi Obstructing Justice).

13.     On ~~February~~ September 15 2006, it was discovered that the person "who"

14. approved officer DeBernardi's "false police Report Supplemental No.# 0005, was approving officer

15. Police Badge number #N.P.227. According to "Novato P.D. CAD Log Printout records", Badge

16. number N.P. 227 is, (Sergeant John David Deadman, Call sign "13X9"!!

17. The Novato P.D. submitted fifthteen (15) different police reports in total to the

18. District Attorneys ~~office~~ as evidence. The evidence show that most of the police reports

19. were Successfully approved by approving officer N.P.133. (See Each police report

20. that was submitted, on first page, under "Administrative Information", for additional

21. examination and inspection). Its realy puzzling that only one police report was

22. ever approved by approving officer N.P.227 out of the #15 police reports. And

23. Magically the report that N.P.227 (Sgt Deadman) did approve, happened to be

24. Officer DeBernardi's false report (Supplemental No.# 0005).

25.     Under California Penal Code Section's 127 "Subornation of Perjury". Every person who

26. willfully procures another person to Commit perjury is guilty of perjury and is punishable

27. in the same manner as he would be if personally guilty of the perjury so procured";

28. and Section 132 "Offering forged altered, or ante-date back, document or ~~record~~

29. record". and 134 "Preparing false documentary evidence". (Sgt Deadman and officer DeBernardi

30. are Both guilty of Perjury, Conspiracy and Obstructing Justice).

31. Unfolding The Conspiracy Cover-up.

32.     Obstruction Of Justice: After months of investigation and analyzing

33. all 15 police reports, dates, times, and Police reports approven officers. A

34.

| Line | |
|---|---|
| 1. | Conspiracy Cover-up was unfoled. (See table 1. ▓▓▓ for more information) |
| 2. | TABLE 1. |
| 3. | (1) on ▓▓▓ officer DeBernardi had his "Police Report Supplemental Nbr 0005" approved by |
| 4. | approving officer (Srgt) Badge-number NB▓▓ (Srgt Deadman) at approval time ▓▓▓ (See |
| 5. | - Debernardi's supplemental No0005 report) |
| 6. | (2) on ▓▓▓ officer DeBernardi had "Police Report Supplemental No 0003" approved by |
| 7. | approving officer (Srgt) Badge-number ▓▓▓ at approval time ▓▓▓ (See Debernardis report |
| 8. | - Supplemental No 0003) |
| 9. | (3) on ▓▓▓ officer ▓▓▓ "Police Report Supplemental No Original" was approved |
| 10. | by officer (Srgt) Badge-number ▓▓▓ at approval time ▓▓▓ (See Trevor Hall report |
| 11. | |
| 12. | Qeustion: How is it, that on 2/24/6, Srgt Deadman "only" approved DeBernardi's false report |
| 13. | (Supplemental No 0005) but yet didnt approve the other "Two police Report's (See As shown on |
| 14. | Table 1). According to DeBernardis false report, he wrote that, "At the time of his Concact with |
| 15. | the Suspect he described him as being Hispanic." It's really amazing how on the night |
| 16. | of the incident, Srgt Deadman knew, and herd on dispatch radio, that the Suspect was a |
| 17. | "Black Male" (African American), and that's what the Novato Police officers were looking for! But yet |
| 18. | Srgt Deadman authorized DeBernardis report anyways, deliberately knowing that the |
| 19. | statements in Debernardis report were false. |
| 20. | Note: Im wonndering, how do you go from, "looking for a Black Male, African American Suspect", |
| 21. | to then Magically Change in the suspect ethnicity, to Hispanic? The Hispanic discription was |
| 22. | only mention after already apprehending a Suspect. |
| 23. | The evidence Cledy show that Both (victims and law enforcement professionals) officer |
| 24. | DeBernardi and "Srgt. Deadman" Bias, motivation to Solve the Crime was Corrupltly |
| 25. | affected by there designation as the victims of the crime and an attack |
| 26. | on other officers that Police Departments of the Novato Police Department. Srgt Deadman and |
| 27. | DeBernardi Both knew that on the night of the incident (2/18/6)" they" were all looking for a |
| 28. | Black guy Suspect. Not a Hispanic male, like shown in Debernardis original police report |
| 29. | that was never Submitted into evidence and was kept secret for 7 months. However, what |
| 30. | both officers didnt know, is that the defendent was going to 1. Ask for the |
| 31. | Novato dispatch tapes and 2nd discover Debernardis secret police report. Those to |
| 32. | Elemints, is what led to the Conspiracy Coverup and the Obstruction of |
| 33. | Justice. If it wasnt for the dispatch tapes, Both officer's would have gotten |
| 34. | away with Perjury. |

| | |
|---|---|
| 1 | ( Exhibit F, "Preparing False Documentary Evidence," |
| 2 | Perjury Under "Oath," Concealing evidence ) |
| 3 | Statements of Facts |
| 4 | On February 18, 2006, while Searching for the perpetrator at the [Scene of the Crime |
| 5 | for the over "two hours" (See Novato CAD Log Printout) officer Debernardi described the |
| 6 | Suspect ethnicly ethnicity as "African American male," over the police dispatch radio |
| 7 | (See Novato P.D. dispatch tapes). |
| 8 | After the search for the Suspect, DeBernardi wrote a report (Police Report Supplemental- |
| 9 | number# Original, Reported Date: 2/18/06). In Debernardi's original report, he wrote, |
| 10 | Susp "Suspect Ethnicity, 'Not of Hispanic origin." |
| 11 | " Commission of Peace Officer Standards Training ..... " |
| 12 | Note: [It's part of DeBernardi's personal Training as a Law Enforcement professional, |
| 13 | to record in the police Report the important Critical details of an investigation] |
| 14 | |
| 15 | On February 24, 2006, two days after Officer DeBernardi had knowledge of the |
| 16 | Suspect name, ethnicity and physica physical identity, he Started/wrote a false report |
| 17 | (Police Report Supplemental-number 0005, Reported Date: 2/24/6) at 00:30 hrs (see Debernardi |
| 18 | report Supplemental No# 0005 under "Administrative Information"). In Debernardi's false report, |
| 19 | he wrote a damaging Contradiction with regards to what he said over dispatch radio |
| 20 | and what he wrote in his Original police report. |
| 21 | (DeBernardi wrote: "At the time of my Contact with Paredes, I was unaware of his |
| 22 | identity. I described him as white or Hispanic male." ) |
| 23 | [Party having power to produce better evidence.] |
| 24 | [If weaker and less satisfactory evidence is offered when it was within the power of |
| 25 | the party to produce Stronger and more satisfactory evidence, the evidence offered should |
| 27 | be viewed with distrust, (Cal. Evidence Code Section 412.)] |
| 28 | After DeBernardi wrote the false police report, it was approved Deliberally approved |
| 39 | by one of the victims (Police Badge Number NP 227) Who was also involve for the |
| 20 | Search of the Black Male perpetrator of the 2/28/06 offense. Debernardi's false report |
| 31 | was Secretly approved by "Victim, Srgt. Deadman," (See Exhibit A-1 for the unmasking of |
| 32 | Why Who is Badge-number NP 227, and why NP 227 Submitted a false police Report). |
| 33 | As for Debernardi's prior report, police Report Supplemental-number Original, it was |
| 34 | Corruptly Conceald for seven months, in order to Submit the false report (Supplemental- |
| 35 | -number# 0005) into evidence and upon Court proceeding against's the Defendant. |

| | |
|---|---|
| 1 | <u>Penal Code Section 134; "Preparing false documentary Evidence"</u> |
| 2 | Every person of preparing any false or ante-dated book, paper, record, instrument in |
| 3 | Writing, or other matter or thing, with intent to produce it, or allow it to be |
| 4 | produce for any fraudulent or deceitful purpose, as genuine or true, upon any |
| 5 | trial, proceeding, or inquiry whatever, authorized by law, is guilty of FELONY. |
| 6 | |
| 7 | On March 16, 2006, the Defendant's Attorney made a "discovery Request, under California |
| 8 | Penal Code Section 1054.1; to have access to "Novato Police Department; dispatch traffic |
| 9 | tapes; And CAD Log Printout". Upon our request, those items were given to US |
| 10 | because it's "mandated by the Constitution of the United States". After hearing |
| 11 | the Novato Police dispatch "tapes", "from that day forward", Officer Debernadi's Criminal misconduct |
| 12 | Started to unfold! |
| 13 | <u>Preliminary Hearing Transcript Report</u> |
| 14 | (Refer to Preliminary Hearing Report, page 14:Line 20-28) |
| 15 | "Testimony from Officer DeBernadi, while under Oath........" |
| 16 | [Q.] At the time of the incident, how did you describe him? |
| 17 | [A.] I described him as a light skin Black Male to dark skin White Male. |
| 18 | <u>Preliminary Report page 30:Line 1-24.</u> |
| 19 | Cross-examination: [Q.] And how did you describe the Suspect in your report--according to your |
| 20 | report? [A.] I describe him as a white or Hispanic male. |
| 21 | [Q.] And what you wrote in your report was, "At the time of my Contact with paredes, |
| 22 | I was unaware of his identity"; is that right? [A.] That's Correct. |
| 23 | [Q.] But you said, quote, "I described him as a white or Hispanic male"; is that |
| 24 | right? [A.] Correct. [Q.] And who would you have described him |
| 25 | that way to? [A.] To other officers at the scene. |
| 26 | [Q.] So, who did you describe him that way to at the scene? |
| 27 | [A.] Any officers around me as we were talking about the incident. |
| 28 | [Q.] After the Search? [A.] During the end of the Search or after the Search. |
| 29 | [Q.] What officers did you Say that to? [A.] I don't have a specific name I |
| 30 | Could give you. |
| 31 | <u>Page 32:Line 1-5</u> |
| 32 | [Q.] So, when you wrote in your report that you described him as a white |
| 33 | or Hispanic male, you were referring to Something other than the |

| | |
|---|---|
| 1 | According to Officer DeBernardi's testimony from the Preliminary Hearing page 30 and 32, |
| 2 | DeBernardi said that, as "he" and other police officers Searched for the Suspect |
| 3 | at the Scene of the Crime while they were "Contacting people and trying to |
| 4 | indentify the Suspect," he told those other officers that the Suspect was a |
| 5 | Hispanic male. DeBernardi stated that he described the Suspect as Hispanic male |
| 6 | "during the end of the Search or after the Search". |
| 7 | Question: If in fact, DeBernardi was realy refering to the Suspect as a |
| 8 | Hispanic male like shown in his false police report, the same report that was |
| 9 | written two days after a Suspect was arrested, why did he Conceal his prior Original |
| 10 | Police Report that Stated, "Not of Hispanic origin".....? If debernardi was refering to |
| 11 | the Suspect as a Hispanic male to other fellow officers Police officers after the |
| 12 | Search, how Come his prior testimony staded that he described the Suspect |
| 13 | as being Hispanic male as "they" were "Contacting people at the Scene of the |
| 14 | Crime trying to indentify indentify the persn.....??" But what is |
| 15 | even more amazing, is the fact that, DeBernardi gave testimony while under [O]ath |
| 16 | testifying to, "describeing the Suspect as Hispanic Male to other police officers |
| 17 | at the [S]cene of the [C]rime while 'they' were Searching for the Suspect," how |
| 18 | Come after the DeBernardi Search Debernardi wrote a police Report Clearly Stateing |
| 19 | that that the Suspects ethnicity was..... "Not of Hispanic Origin....???" |
| 20 | DeBernardi Committed Perjury by Stateing that he described the Suspect as |
| 21 | Hispanic male at the Scene of the Crime. The Evidence is what it is, Not what |
| 22 | DeBernardi say it is. |
| 23 | Perjury penal Code 118 evidence Perjury Under Oath. |
| 24 | Every person who, having taken oath to (testify, declare, etc) truly befor any Competent |
| 25 | tribunal, officer, or person, in any of the case in which the oath may by law |
| 26 | be administered willfuly and Contrary to the oath, States as true any material |
| 27 | matter which he or she knows to be false, is guilty of the Crime of perjury |
| 28 | in violation of Penal Code 118. |
| 29 | Concealing Evidence Penal Code 135, |
| 30 | False Peace Officer Report Penal Code 118.1 |

# Incident Report
# NOVATO POLICE DEPARTMENT

**06-1087**

Supplement No
ORIG



909 MACHIN AVENUE

NOVATO, CA 94945-3602

Phone
(415) 897-4361

Fax
(415) 898-5344

Reported Date
02/18/2006
Nature of Call
HIT & RUN
Officer
DEBERNARDI,TAIRA

## Administrative Information

| Agency | | Case Number | Supplement No | Reported Date | | Reported Time | CAD Event |
|---|---|---|---|---|---|---|---|
| NOVATO POLICE DEPARTMENT | | 06-1087 | ORIG | 02/18/2006 | | 22:09 | L06024658 |

| Status | Nature of Call | | Location | | | | |
|---|---|---|---|---|---|---|---|
| Report to follow | Hit and Run | | 9 GARDEN CT | | | | |

| City | ZIP Code | Rep Dist | Area | Beat | From Date | From Time | To Date |
|---|---|---|---|---|---|---|---|
| Novato | 94947 | NP4C/ | NP | NP4 | 02/18/2006 | 22:08 | 02/18/2006 |

| To Time | Officer | | | | Assignment | | 2nd Officer |
|---|---|---|---|---|---|---|---|
| 22:09 | NP281/DEBERNARDI,TAIRA | | | | Police Officer | | BAKER,STUART |

| Assignment | Entered by | Assignment | RMS Transfer | |
|---|---|---|---|---|
| Police Officer | NP281 | Police Officer | Successful | |

| Solvability | | | Score | Approving Officer | | Approval Date |
|---|---|---|---|---|---|---|
| B- Medium/High Level - Priority 2 | | | 275 | NP133 | | 02/21/2006 |

Approval Time
09:28:04

Related Case Number
NP06-1085 / NP06-1086

| # Offenses | Offense | | | Description | | Complaint Type | |
|---|---|---|---|---|---|---|---|
| 1 | 20002 VC | | | Hit & Run | | | |

| Link | Involvement | Invl No | Name | | | Race | Sex | DOB |
|---|---|---|---|---|---|---|---|---|
| SUS | SUS | 1 | UNKNOWN | | | O | M | |
| VIC | VIC | 1 | MARTIN,NATHAN BRUCE | | | W | M | 08/25/1984 |

| # Offenses | Offense | | | Description | | Complaint Type | |
|---|---|---|---|---|---|---|---|
| 2 | 23103 VC | | | Reckless Driving | | | |

| Link | Involvement | Invl No | Name | | | Race | Sex | DOB |
|---|---|---|---|---|---|---|---|---|
| SUS | SUS | 1 | UNKNOWN | | | O | M | |

| # Offenses | Offense | | | Description | | Complaint Type | |
|---|---|---|---|---|---|---|---|
| 3 | 22107 VC | | | Warr/Inf Traffic Vio | | | |

| Link | Involvement | Invl No | Name | | | Race | Sex | DOB |
|---|---|---|---|---|---|---|---|---|
| SUS | SUS | 1 | UNKNOWN | | | O | M | |

## Person Summary

| Invl | Invl No | Type | Name | | MNI | Race | Sex | DOB |
|---|---|---|---|---|---|---|---|---|
| SUS | 1 | I | UNKNOWN | | | O | M | |
| VIC | 1 | I | MARTIN,NATHAN BRUCE | | 3008744 | W | M | 08/25/1984 |

## Vehicle Summary

| Invl | Type | License No | State | Lic Year | Year | Make | Model | Style | Color |
|---|---|---|---|---|---|---|---|---|---|
| ACC | 1 | | | | 2003 | BMW | 530 | 4D | SIL |
| ACC | 1 | 5LHB657 | CA | 2006 | 2005 | TOYT | SCI | 2D | BLK |

## Summary Narrative

See attached collision report.

# Incident Report

## NOVATO POLICE DEPARTMENT

06-1087

Supplement No
ORIG

## Suspect 1: UNKNOWN

| Involvement | Invl No | Type | Name | | Race | Sex | Age |
|---|---|---|---|---|---|---|---|
| Suspect | 1 | Individual | UNKNOWN | | Other | Male | 25 |

| Ethnicity | Juvenile? | Hair Color | Eye Color | Skin | Gen Appearance | Build |
|---|---|---|---|---|---|---|
| Not of Hispanic origin | No | Black | Brown | Medium | Clean | Heavy |

| Hair Description | Facial Features |
|---|---|
| Short hair/Straight | Unshaven |

Clothing
Black/Short sleeve

## Victim (Person) 1: MARTIN,NATHAN BRUCE

| Involvement | Invl No | Type | Name | MNI |
|---|---|---|---|---|
| Victim (Person) | 1 | Individual | | |

| Race | Sex | DOB | Age | Ethnicity |
|---|---|---|---|---|
| White | Male | 08/25/1984 | 21 | Not of Hispanic origin |

| | Eye Color | Skin |
|---|---|---|
| | Blue | Light |

Ho

ZIP Code
94949

Type
Ope

Ce

Employer/School
SANTA ROSA JC

## Vehicle

| Involvement | Type | Year | Make | Model | Style | Color |
|---|---|---|---|---|---|---|
| Traffic accident | Auto | 2003 | BMW | 530 | 4-door Automobile | Silver/aluminum |

| Value | VIN | Storage | Dispo | Dispo Date |
|---|---|---|---|---|
| $40,000 | WBADT63453CK31969 | Downtown Ignacio Tow | Towed | 02/19/2006 |

| Damage | # Occupants |
|---|---|
| Left | 1 |

| Involvement | Type | Year | Make | Model | Style | Color |
|---|---|---|---|---|---|---|
| Traffic accident | Auto | 2003 | BMW | 530 | 4-door Automobile | Silver/aluminum |

| Value | VIN | Storage | Dispo | Dispo Date |
|---|---|---|---|---|
| $40,000 | WBADT63453CK31969 | Downtown Ignacio Tow | Towed | 02/19/2006 |

| Damage | # Occupants |
|---|---|
| Left | 1 |

| Has Keys | Release Information |
|---|---|
| WITH VEHICLE | RO or agent |

| Tow By | Condition | Auth By |
|---|---|---|
| Downtown Ignacio Tow | Damaged | DEBERNARDI,TAIRA |

Tow From
9 GARDEN CT

| Tow To | Person Notified |
|---|---|
| 106 GALLI DR #A | OWNER |

| Ntfy Date | Tow Auth/Reason |
|---|---|
| 02/19/2006 | 22651(C) VC |

| Link | Involvement | Invl No | Name | Race | Sex | DOB |
|---|---|---|---|---|---|---|
| DRV | SUS | 1 | UNKNOWN | O | M | |

## Vehicle: 5LHB657

| Involvement | Type | License No | State | Lic Year |
|---|---|---|---|---|
| Traffic accident | Auto | 5LHB657 | California | 2006 |

| Lic Type | Year | Make | Model |
|---|---|---|---|
| Passenger Automobile Plates | 2005 | Toyota/Toyota Motor Co., Ltd. | SCI |

| Style | Color | VIN | Dispo | Dispo Date |
|---|---|---|---|---|
| 2-door Automobile | Black | JTKDE177950030674 | Left at Scene | 02/19/2006 |

| Damage | # Occupants |
|---|---|
| Right | 0 |

| Link | Involvement | Invl No | Name | Race | Sex | DOB |
|---|---|---|---|---|---|---|
| SUS | SUS | 1 | UNKNOWN | O | M | |
| OWN | VIC | 1 | MARTIN,NATHAN BRUCE | W | M | 08/25/1984 |

## Narrative

| Report Officer | Printed At | |
|---|---|---|
| NP281/DEBERNARDI,TAIRA | 08/18/2006 08:08 | Page 2 of 3 |

# Incident Report
# NOVATO POLICE DEPARTMENT

**06-1085**

Supplement No
*0005*

Officer Taira Debernardis
False Police Report (Supplemnt
No. 0005, Reported date 2/24/06)

CONFIDENTIAL INFORMATION
RELEASED

AVENUE
Reported Date **02/24/2006**
Nature of Call **ASSAULT**
Officer **DEBERNARDI, TAIRA**

EXHIBIT - E

## Administra...

| Agency | | Supplement No | Reported Date | Reported Time | CAD Event |
|---|---|---|---|---|---|
| NOVATO POLIC... | ...er 0...85 | 0005 | 02/24/2006 | 00:30 | L06024634 |

Status **Report to f...**

Location **1535 S NOVA...** ...rav,Simp,Battery,Att murd

City **Novato** — ZIP Code **94947** — Rep Dist **S21C/**

| Area | Beat |
|---|---|
| SO2 | SO21 |

...18/2006   To Time **22:07**

Officer **NP281/DEBERN...**

Assignment **Police Officer**   2nd Officer **DEBERNARDI, TAIRA**

RMS Transfer **Successful**   Approving Officer **NP227**

Police Officer   NP281   Police Officer

Approval Date **02/24/2006**   Approval Time **14:56:52**

## Modus Operandi
## Narrative

### Introduction
On 02-18-06 at approximately 2205 hours, I was dispatched to the area of DeSilva's bar (1535 S. Novato Blvd) on a report of a physical altercation not associated with this incident.

Upon arrival, I pulled into the private parking lot fronting 1535 S. Novato Blvd and observed a gray 2003 BMW, with paper plates, also pulling into the PPL from Center Rd. I was behind the vehicle as the vehicle proceeded southbound towards the Post Office. I realized the vehicle would be unable to continue forward, due to the presence of NPD vehicles that also responded to assist with the reported altercation. I therefore stopped approximately 20 feet behind the BMW, allowing plenty of space for the driver to maneuver around the patrol vehicle if needed.

While still sitting inside my patrol vehicle, I observed the back-up lights of the BMW activate. The vehicle started backing in a straight line towards my patrol vehicle and the driver appeared unaware of my presence. I repeatedly honked my horn to alert the driver of the BMW of my presence and the impending collision. The driver continued backing until he struck the front bumper of my patrol vehicle (see collision portion of case NP06-1085 for additional information).

I then contacted the driver and sole occupant of the vehicle, later identified as S-Paredes.

### Investigation
I approached the BMW from the driver side and attempted to contact the driver through the front driver side window, which was closed. I knocked on the window and requested to see Paredes' CDL, registration and proof of insurance. Paredes did not comply with my request and appeared to be putting the vehicle in "drive."

The BMW began to pull forward and I walked on the side of it, by the driver's side window. I repeatedly requested Paredes roll down the side window and turn the vehicle off. Once again Paredes refused to comply with my request and, realizing he could not continue forward, he placed the vehicle in "reverse."

Paredes backed up rapidly, making a right turn to avoid my patrol vehicle and forcing me to follow the car movement to avoid being struck by the swing of the front portion of the BMW. I extended my department issued expandable baton and continued giving verbal orders to Paredes to turn the engine off and get out of the vehicle. Officer Baker, who was approaching the vehicle to assist me with this incident, was now in a position fronting the vehicle.

Paredes put the vehicle in "drive" and rapidly accelerated towards Officer Baker. I struck the front driver side

| Report Officer | Printed At | |
|---|---|---|
| NP281/DEBERNARDI, TAIRA | 02/27/2006 14:24 | Page 1 of 2 |

177498

## Incident Report
## NOVATO POLICE DEPARTMENT

**06-1085**

Supplement No
0005

**Narrative**

window of the vehicle with my baton, but did not brake the glass. Officer Baker ran to his left, to avoid being struck by the vehicle.

Paredes rapidly accelerated through the parking lot towards Center Rd and struck the front of Sgt Deadman's patrol vehicle, which was stopped at the entrance/exit of the parking lot area (see collision report NP06-1086 for additional information).

Paredes continued driving eastbound on Center Rd and Garden Ct, where he collided with a parked vehicle (see collision report NP06-1087 for additional information). He then fled the area on foot.

At the time of my contact with Paredes, I was unaware of his identity. I described him as a White or Hispanic male, approximately 25 years old. He had short black hair (approximately ½ to 1 inch long), brown eyes and was wearing a black t-shirt.

I was later asked to look at a photographic lineup and identify, if present, the driver of the vehicle. I identified the picture of Paredes as being the suspect in this incident. I advised Officer Rivera that at the time of my contact with Paredes, he was a little thicker in the face than shown on the picture. Additionally Paredes had shorter hair and appeared a little older than his picture depicted. Nevertheless, Paredes was the driver and sole occupant of the stolen BMW at the time of this incident.

**Disposition**
Supplement to be forwarded to the DA's Office.

| Report Officer | Printed At | |
|---|---|---|
| NP281/DEBERNARDI,TAIRA | 02/27/2006 14:24 | Page 2 of 2 |



Carlos Paredes
Marin County Jail
13 Peter Behr DR
San Rafael CA 94903

Clerk of the United States District Court of Northern District of California
450 Golden Gate Avenue
Box 36060
San Francisco CA 94102